IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>DINO NICK MITCHELL,<br>Defendant. | MEMORANDUM DECISION AND<br>ORDER ON ADMISSIBILITY OF<br>CO-CONSPIRATOR STATEMENTS<br><br><br><br>Case No. 2:07-CR-149 TS |

This matter comes before the Court subsequent to a *James*[1] hearing held on February 25, 2008, to address the admissibility, under Fed.R.Evid. 801(d)(2)(E), of alleged co-conspirator statements.  Defendant argues that the statements the government seeks to introduce do not meet the requirements of Fed.R.Evid. 801(d)(2)(E) and that allowing their admission would violate his rights under the Sixth Amendment's Confrontation Clause.  For the reasons discussed below, the Court finds that the statements at issue are admissible under Rule 801(d)(2)(E) and that the Confrontation Clause is inapplicable here.

---

[1]*United States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917 (1979).

1

## I. BACKGROUND

For the purposes of this Order, the Court makes the following findings.  In December 2006, Defendant Donny Green stole United States savings bonds, cash, coins, and jewelry from a home in Sparks, Nevada.  Defendant Tony Mitchell contacted Defendant Dino Mitchell in January or February 2007, stating that he and others—presumably Green—were in possession of savings bonds that they wished to cash and asked if Dino Mitchell knew how this could be done.  Dino Mitchell, in turn, contacted Defendant Danny Leo to see if Leo knew how the bonds could be cashed.  Leo stated that an acquaintance, Steve Costello,[2] who lived in Chicago, Illinois, might be able to help.

In February 2007, Danny Leo, Dino Nick Mitchell, Donny Green, Jerry Mitchell, and Tony Mitchell met at Dino Mitchell's house in Phoenix, Arizona.  At this meeting, Donny Green informed the other Defendants that the bonds were stolen.  Defendants then discussed how the bonds could be sold.  Defendants contacted Steve Costello to discuss how the bonds could be sold.  Danny Leo told Costello that he would send him one of the bonds to see if Costello could negotiate it, to which Costello agreed.  Danny Leo and Donny Green later mailed three of the bonds to Steve Costello in Chicago.

At some point, Danny Leo, Dino Nick Mitchell, Donny Green, Jerry Mitchell, and Tony Mitchell determined that they would transport the remaining bonds by train from Sacramento, California to Chicago.  Once they arrived in Chicago, Defendants, with the assistance of Steve Costello, would attempt to cash the stolen bonds.  Defendants then traveled from Phoenix to Sacramento by car and, on February 17, 2007, boarded a train for Chicago.  Defendants were

---

[2]Costello has not been indicted in this matter.

2

removed from the train in Helper, Utah on February 18, 2007, due to misconduct.  After being

removed from the train, Defendants were discovered to be in possession of the stolen bonds.

## II.  CO-CONSPIRATOR STATEMENTS

Defendant is charged with a conspiracy to transport stolen securities, a violation of 18

U.S.C. §§ 371 and 2314.  At trial, the government seeks to admit the following co-conspirator

statements pursuant to Fed.R.Evid 801(d)(2)(E):[3]

•       In January or February of 2007, Tony Mitchell contacted Dino Mitchell and stated that he

        and others had some savings bonds they wished to cash, and asked if Dino Mitchell knew

        how this could be done.

•       During a trip to California and Mexico, Dino Mitchell asked Danny Leo if Leo knew how

        to get the bonds cashed.  Leo stated that an acquaintance in Chicago, Steve Costello,

        might be able to help.

•       Danny Leo, Dino Nick Mitchell, Donny Green, Jerry Mitchell, and Tony Mitchell met at

        Dino Mitchell's house in Phoenix, Arizona, in February 2007.  Donny Green stated that

        he wanted to sell the bonds for $150,000.  Dino Mitchell and Danny Leo offered to help

        cash the bonds.

•       Tony Mitchell and Jerry Mitchell said that Donny Green found the bonds.

•       Donny Green told Danny Leo not to ask too many questions about where the bonds came

        from.  Donny Green said not to worry about if they were stolen.  Danny Leo told Donny

_____

        [3]The government also argues that, in addition to being admissible as co-conspirator
statements, some of these statements are admissible either because they are non-hearsay in that
they are not being offered for the truth of the matter asserted or that they are admissible as
adoptive admissions of a party-opponent under Fed.R.Evid. 801(d)(2)(A) or (B).  This Order
only addresses the admissibility of these statements as co-conspirator statements.

Green that it mattered if they were stolen, because they would be harder to cash.  Donny Green told Danny Leo that the bonds were stolen from a house in Nevada, but that the owner had not reported them stolen.

•   Donny Green said that he stole cash, the bonds, coins, and jewelry from the same house.

•   In a speaker-phone telephone call with Steve Costello, Costello told Donny Green, Danny Leo, Dino Mitchell, Tony Mitchell, and Jerry Mitchell that the bonds would be difficult to valuate, and difficult to negotiate.

•   Donny Green, Danny Leo, Dino Mitchell, Tony Mitchell, and Jerry Mitchell collectively discussed traveling to Chicago to attempt to cash the bonds.  They discussed the best mode of transportation and decided to take the train from Sacramento, where most of the bonds were stored.

•   Donny Green told Danny Leo and Dino Mitchell that they would receive a share of the proceeds from cashing or selling the bonds.

•   Donny Green told Danny Leo, Dino Mitchell, Tony Mitchell, and Jerry Mitchell to stay at a motel in Sacramento the night before their scheduled travel by train to Chicago.

In addition to these statements, the government has provided the with Court the following evidence in support of its contention that a conspiracy existed, that Donny Green, Danny Leo, Dino Mitchell, Tony Mitchell, Jerry Mitchell, and Steve Costello were part of the conspiracy, and that the above-listed statements were made in furtherance of the conspiracy:

•   The admissions under oath at the change of plea hearings for Donny Green, Danny Leo, Tony Mitchell, and Jerry Mitchell that each of these individuals, as well as Dino Mitchell, were part of a conspiracy to transport stolen bonds in interstate commerce.  The government further requests the Court to consider the fact that it has previously found

4

that Donny Green, Danny Leo, Tony Mitchell, and Jerry Mitchell were guilty of conspiracy.

•       The statement of Steve Costello summarized in an FBI 302.

•       Receipts and documents seized from Dino Mitchell, Donny Green, Danny Leo, and Jerry Mitchell corroborating Danny Leo's account of events.

•       Donny Green's admission under oath that he stole the bonds from a house in Sparks, Nevada.

The government is not seeking to admit the statements made by Defendants at the change of plea hearings or the statements made by Steve Costello to the FBI as co-conspirator statements. Rather, the government is using those statements as independent evidence in support of its contention that a conspiracy existed, that Donny Green, Danny Leo, Dino Mitchell, Tony Mitchell, Jerry Mitchell, and Steve Costello were part of the conspiracy, and that the above-listed statements were made in furtherance of the conspiracy.

A.      STANDARD

Under Fed. R. Evid. 801(d)(2)(E), statements by co-conspirators are properly admissible as non-hearsay at trial if the Court determines, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy.[4] It is the burden of the government to prove each of the elements by a preponderance of the evidence and it is the trial court that determines admissibility.[5] In deciding whether the prerequisites for

_____

[4]*United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994).

[5]*Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

admission of the co-conspirator statements have been satisfied, the Court may consider the co-conspirator statements sought to be admitted as evidence of the conspiracy.[6]  The Tenth Circuit has held, however, that "there need . . . be some independent evidence linking the defendant to the conspiracy."[7]  "Such independent evidence may be sufficient even when it is not 'substantial.'"[8]  The Tenth Circuit has defined "independent evidence" as "evidence other than the proffered [co-conspirator] statements themselves."[9]

B.      ANALYSIS

    *1.      Existence of a Conspiracy*

The first element the Court must consider is the existence of a conspiracy.  "To prove conspiracy, the government must show (1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent."[10]

"'To prove an agreement, the government need not offer direct proof of an express agreement on the part of the defendant.  Instead the agreement may be informal and may be inferred entirely from circumstantial evidence.'"[11]  However, it is not enough for the government

---

[6]*United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

[7]*United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987).

[8]*Lopez-Gutierrez*, 83 F.3d at 1242.

[9]*Martinez*, 825 F.2d at 1451.

[10]*United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).

[11]*United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (quoting *United States v. Lang*, 364 F.3d 1210, 1223 (10th Cir. 2004)).

to show only mere association with conspirators known to be involved in crime; casual transactions between the defendant and conspirators known to be involved in the crime; or a buyer-seller relationship between the defendant and a member of the conspiracy.[12]

The government has presented sufficient evidence to show that there was an agreement to violate the law.  The evidence presented by the government shows that Donny Green, Danny Leo, Dino Mitchell, Tony Mitchell, Jerry Mitchell, knowing that the bonds were stolen, agreed to transport the stolen bonds in interstate commerce.  Defendants further agreed that, with the assistance of Steve Costello, they would endeavor to cash those bonds once they arrived in Chicago.

"To prove knowledge of the essential objectives of a conspiracy, the government does not have to show the defendant knew all the details or all the members of a conspiracy."[13]  "Rather, the government only needs to demonstrate the 'defendant shared a common purpose or design with his alleged coconspirators.'"[14]

The essential objectives of the conspiracy in this case were to transport the stolen bonds to Chicago and, once there, attempt to sell them.  The government has presented sufficient evidence to show that Defendant knew of the essential objectives of the conspiracy.  As noted, Defendant was aware that the bonds were stolen.  Defendant had been contacted by Tony Mitchell who asked if Defendant knew how the bonds could be cashed.  Defendant in turn asked Danny Leo if he knew how the bonds could be cashed.  Defendant was present at the February

---

[12]*United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992).

[13]*Yehling*, 456 F.3d at 1240.

[14]*Id*. (quoting *Evans*, 970 F.2d at 669).

2007 meeting where Defendants discussed how the bonds could be sold.  In fact, that meeting took place at Defendant's home.  Additionally, Defendant agreed, along with the other co-Defendants, to transport the stolen bonds in interstate commerce with the intent to sell them. From this, the Court finds that the government has presented sufficient evidence to show Defendant had knowledge of the essential objectives of the conspiracy.

"A defendant may be convicted of a conspiracy only if the government proves that the defendant had knowledge of the conspiracy and voluntarily participated therein.  A conspirator need not know of the existence or identify of the other members of the conspiracy or the full extent of the conspiracy, but he or she must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator."[15]

The government has presented sufficient evidence to show that Defendant knowingly and voluntarily took part in the conspiracy.  As discussed above, Defendant knew that the bonds were stolen and was involved in the decision to transport those bonds in interstate commerce in an attempt to sell them.  Defendant did so knowingly and voluntarily.

"Interdependence exists when 'each alleged coconspirator . . . depend[s] on the successful operation of each 'link' in the chain to achieve the common goal.'"[16]  "In other words, each coconspirator's 'actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole.'"[17]

---

[15]*Evans*, 970 F.2d at 669–70 (internal quotation marks and citation omitted).

[16]*Yehling*, 456 F.3d at 1241 (quoting *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir. 1984)).

[17]*Id*. (quoting *Evans*, 970 F.2d at 670).

Here, the government has shown sufficient evidence of interdependence. The evidence presented by the government shows that: Donny Green stole the bonds; Tony Mitchell contacted Dino Mitchell to ask if he knew how the bonds could be sold; Dino Mitchell then asked Danny Leo if Leo knew how to get the bonds cashed; Leo stated that an acquaintance in Chicago, Steve Costello, might be able to help; Donny Green, Danny Leo, Dino Mitchell, Tony Mitchell, and Jerry Mitchell met to discuss cashing the bonds and then transported the bonds from Sacramento to Chicago; once they arrived in Chicago, Defendants, with the help of Costello, planned to cash the bonds. From this, the Court finds that the government has provided sufficient evidence of interdependence.

Based on the above, the government has shown, by a preponderance of the evidence, the existence of a conspiracy. The government has shown that a conspiracy existed between Danny Leo, Dino Nick Mitchell, Donny Green, Jerry Mitchell, Tony Mitchell, and Steve Costello. The objective of the conspiracy was to transport in interstate commerce, and then sell, stolen United States savings bonds. The Court bases this conclusion on both the statements of the co-conspirators and the other supporting independent evidence presented by the government.

2.     *Members of the Conspiracy*

The second element the Court must consider is whether the declarant and the defendant were both members of the conspiracy. Each of the statements the government seeks to introduce were made by members of the conspiracy. Based on this and the discussion set forth above, the Court finds that the government has proven by a preponderance of the evidence that the declarant and Defendant were members of the conspiracy.

     *3.     During the Course and in Furtherance of the Conspiracy*

Finally, the Court must consider whether the statements were made during the course and in furtherance of the conspiracy.  A statement is made during the course of a conspiracy if it is made before the objectives of the conspiracy have either failed or been achieved.[18]  "Statements by a conspirator are in furtherance of the conspiracy when they are 'intended to promote the conspiratorial objectives.'"[19]  Such promotion occurs through statements that explain events of importance to the conspiracy in order to facilitate its operation, statements between co-conspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, and statements of a co-conspirator identifying a fellow co-conspirator.[20]  A statement need not further the attainment of an agreement; it is enough that it further an object of the agreement.[21]

Here, the Court finds that the government has proven by a preponderance of the evidence that each of the statements sought to be introduced was made during the course and in furtherance of the conspiracy.  Each statement was made before the conspiracy failed.  Further, each statement was intended to promote the conspiratorial objectives of the conspiracy.

Based on the above, the Court finds that the government has proven, by a preponderance of the evidence, that the statements it intends to introduce are admissible as non-hearsay pursuant to Fed.R.Evid. 801(d)(2)(E).

---

[18]*United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993).

[19]*United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)).

[20]*Id.*

[21]*United States v. Magleby*, 420 F.3d 1136, 1145 (10th Cir. 2005).

III.  CONFRONTATION CLAUSE

Defendant further argues that admission of the co-conspirator statements would violate his rights under the Sixth Amendment's Confrontation Clause.  Defendant acknowledges that statements made in furtherance of a conspiracy are generally viewed as non-testimonial. Defendant asserts, however, that when declarants of such statements would objectively know that the statements might be used to investigate or prosecute a crime, those statements are subject to exclusion under *Crawford v. Washington*.[22]  The government contends that the Confrontation Clause is not implicated here.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him."[23]  The Confrontation Clause prohibits the admission of testimonial hearsay unless the declarant is unavailable and there was a prior opportunity for cross-examination.[24]  The Supreme Court, in *Crawford*, declined to provide a comprehensive definition of testimonial, concluding that, at a minimum, it would comprise prior testimony at a preliminary hearing, before a grand jury, at a former trial, and statements made during police interrogations.[25]  In *Davis v. Washington*,[26] the Court provided the following guidance:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the

---

[22]541 U.S. 36 (2004).

[23]U.S. Const. amend. VI.

[24]*Crawford*, 541 U.S. at 68.

[25]*Id.*

[26]547 U.S. 813 (2006).

11

> interrogation is to enable police assistance to meet an ongoing emergency. They
> are testimonial when the circumstances objectively indicate that there is no such
> ongoing emergency, and that the primary purpose of the interrogation is to
> establish or prove past events potentially relevant to later criminal prosecution.[27]

The Tenth Circuit has held that "a statement is testimonial if a reasonable person in the position

of the declarant would objectively foresee that his statement might be used in the investigation or

prosecution of a crime."[28]

The Court finds that the statements at issue here are not testimonial and, therefore, the

Confrontation Clause is not implicated. The statements at issue do not consist of testimony from

a preliminary hearing, before a grand jury, or at a former trial, nor do they consist of statements

made during police interrogations. Further, there is no evidence that the primary purpose of

these conversations was to aid an investigation or prosecution. Finally, there is no evidence that

the declarant would objectively foresee that his statement might be used in the investigation or

prosecution of a crime. Therefore, the Court finds that the statements at issue here are not

testimonial and, as a result, admission of these statements does not implicate Defendant's Sixth

Amendment Confrontation Clause rights. The Court's conclusion is supported by: the Supreme

Court's language in *Crawford* that statements made in furtherance of a conspiracy are examples

of statements that by their nature are not testimonial;[29] the post-*Crawford* Tenth Circuit

---

[27]*Id*. at 822.

[28]*United States v. Summers*, 414 F.3d 1287, 1302 (10th 2005).

[29]*Crawford*, 541 U.S. at 56 (stating that statements in furtherance of a conspiracy are
examples of statements that by their nature are not testimonial).

12

decision's holding that co-conspirator statements are not testimonial;[30] and decisions from every other circuit holding that co-conspirator statements are not testimonial.[31]

Defendant appears to take the position that, if discovered, any statement made about a crime may be used in a criminal prosecution and would, therefore, be testimonial. The Tenth Circuit recently rejected a similar argument in *United States v. Mendez.*[32] In *Mendez*, the Tenth Circuit addressed the admission of a drug ledger.[33] The defendant objected to the admission of the ledger on hearsay and Confrontation Clause grounds.[34] The court held that the ledger was not hearsay and, even if the ledger did constitute hearsay, it did not implicate the Confrontation Clause.[35] In that case, the defendant argued that "the author of the drug ledger would have

---

[30]*See United States v. Ramirez*, 479 F.3d 1229, 1249 (10th Cir. 2007) ("Because *Crawford* did not overturn *Bourjaily*, the latter continues to control our application of the Confrontation Clause to Rule 801 co-conspirator statements."); *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) ("We find no merit to Appellant's unfounded and unsupported contention that *Crawford's* instruction on testimonial hearsay somehow eviscerated Federal Rule of Evidence 801(d)(2)(E), especially since Rule 801(d)(2)(E) treats declarations by coconspirators not as an exception to the hearsay rules, but as nonhearsay."); *United States v. Faulkner*, 439 F.3d 1221, 1225 (10th Cir. 2006) (holding that district court's conclusion that recorded co-conspirator statements were not testimonial was well-supported by *Crawford*).

[31]*See United States v. Sullivan*, 455 F.3d 248, 258 (4th Cir. 2006); *United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006); *United States v. Underwood*, 446 F.3d 1340, 1347–48 (11th Cir. 2006); *United States v. Bridgeforth*, 441 F.3d 864, 868–69 (9th Cir. 2006); *United States v. Hansen*, 434 F.3d 92, 100 (1st Cir. 2006); *United States v. Martinez*, 430 F.3d 317, 329 (6th Cir. 2005); *United States v. Hendricks*, 395 F.3d 173, 184 (3d Cir. 2005); *United States v. Saget*, 377 F.3d 223, 224–25 (2d Cir. 2004); *United States v. Robinson*, 367 F.3d 278, 292 n.20 (5th Cir. 2004); *United States v. Reyes*, 362 F.3d 536, 540 n.4 (8th Cir. 2004).

[32]514 F.3d 1035 (10th Cir. 2008).

[33]*Id*. at 1045–46.

[34]*Id*. at 1045.

[35]*Id*.

known at some point that, if discovered, the ledger would have been used in a criminal

prosecution thereby implicating *Davis'* definition of 'testimonial.'"[36]

The Tenth Circuit rejected that argument:

That a piece of evidence may become "relevant to later criminal prosecution" does not automatically place it within the ambit of "testimonial." At no point did the author keep the drug ledger for the *primary purpose* of aiding police in a criminal investigation, the focus of the *Davis* inquiry. Under [the defendant's] reading of *Crawford* and *Davis* any piece of evidence which aids the prosecution would be testimonial and subject to Confrontation Clause scrutiny. Such an interpretation is antithetical to the logic of the Confrontation Clause, the Supreme Court's precedent, and this circuit's case law. It therefore must fail.[37]

This reasoning is equally applicable here. There is no evidence to support the contention

that any of the statements made by the co-conspirators were made for the primary purpose of

aiding in a criminal investigation or prosecution. The fact that those statements are now being

used in a criminal prosecution does not, by itself, make those statements testimonial. As a result,

the Court must reject Defendant's argument and will allow the admission of the statements.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for James Hearing (Docket No. 146) is GRANTED.

It is further

ORDERED that the statements set out in the government's Notice of Non-Hearsay Out-

of-Court Statements (Docket No. 147) are admissible pursuant to Fed.R.Evid. 801(d)(2)(E). It is

further

---

[36]*Id.*

[37]*Id.* at 1046.

ORDERED that the time from the filing of the Motion—February 19, 2008—through the

trial date established by the Court is excluded from the computation of the Speedy Trial Act time

pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED   May 12, 2008.

BY THE COURT:

_____

TED STEWART
United States District Judge